FILED

2012 Aug-15  PM 04:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| VICKIE M. CHAMPION, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | CASE NO. 2:12-CV-01966-S |
| GLOBAL CREDIT CARD | ) | |
| SERVICES, LLC, NCO FINANCIAL | ) | |
| SYSTEMS, INC., and CAPITAL | ) | |
| ONE, N.A., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Pending before the court are a motion for partial dismissal (doc. 11) by defendant Capital One, N.A., a memorandum in support thereof (doc. 12), plaintiff Vickie Champion's opposition thereto (doc. 15), and defendant's reply (doc. 16). Having considered the motion and all other pleadings filed to date, the court finds as follows:

### Factual Background

Defendants Global Credit Card Services, LLC ("Global"), NCO Financial Systems, Inc. ("NCO"), and Capital One, N.A. ("CONA") are engaged in the debt collection business (Compl. ¶ 9). Defendants are attempting to collect a debt which they allege plaintiff owes but which plaintiff avers has been previously paid in full

1

and/or is stale (Compl. ¶ 10). Plaintiff has been contacted numerous times in writing and via telephone by both defendants and their attorneys (Compl. ¶¶ 11–25). Plaintiff has "continuously disputed" that she owed the debt, which she avers has been paid (Compl. ¶¶ 10, 21, 23). Nonetheless, plaintiff alleges that she has received numerous collection calls from defendant NCO made both by automatic recordings and live representatives, and that these representatives "often made disparaging remarks and were harassing and abusive" (Compl. ¶ 21). She also avers that "at all times relevant [to this litigation] [d]efendants have called [p]laintiff hundreds of times at all times of the day and night," that she has "continuously explained" that she is no longer responsible for the debt, that she has repeatedly requested that defendants no longer contact her, and that the harassing phone calls have continued (Compl. ¶ 25). Plaintiff alleges violation of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.* (Count I, Compl. ¶¶ 31–45), invasion of her right to privacy (Count II, Compl. ¶¶ 46–51), false light (Count III, Compl. ¶¶ 52–57), defamation (Count IV, Compl. ¶¶ 58–65), and wantonness (Count V, Compl. ¶¶ 66–71). Defendant CONA moves for dismissal of Counts I–III and V.

### Standard of Review

When an issue is before the court on a motion to dismiss, the court must accept the allegations of the complaint as true and construe them "'in the light most

favorable to the plaintiff.'" *Simmons v. Sonyika*, 394 F.3d 1335, 1338 (11th Cir. 2004) (citing *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)). *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (in turn citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n. 1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974))). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 667(2009) (quoting *Twombly*, 550 U.S. at 570). *See also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (stating that "[a] complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "To survive dismissal, 'the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff's complaint should be dismissed.'" *James River Ins. Co. v. Ground Down Engineering, Inc.*, 540 F.3d 1270, 1274 (11th

Cir. 2008) (citing *Twombly*, 550 U.S. at 555).

## Legal Analysis

### Fair Debt Collections Practices Act Claim (Count I)

Defendant contends that plaintiff's Fair Debt Collection Practices Act ("FDCPA") claim against it should be dismissed because defendant is not subject to the FDCPA. *See* Def. Mem. (doc. 12) at 2–5. The FDCPA, 15 U.S.C. § 1692 *et seq.* (2010), applies only to "debt collectors"; *see* 15 U.S.C. § 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors . . . ."). The statute defines "debt collector" as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . The term does not include—(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor . . . .

15 U.S.C. § 1692a(6). The statute defines "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed," excluding "any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4).

One element that a plaintiff must establish to prevail on an FDCPA claim is

that the defendant is a "debt collector" as defined by the statute. Here, defendant avers that it is the originator of the debt at issue, such that defendant is a "creditor" as the term is defined in the FDCPA. The plaintiff concurs. Therefore, by joint stipulation of the parties, defendant's motion to dismiss is due to be **GRANTED** with respect to Count I of plaintiff's complaint. The court will so rule by separate order.

**Invasion of Privacy Claim (Count II)**

In *Phillips v. Smalley Maintenance Services, Inc.*, 435 So. 2d 705, 708–09 (Ala. 1983), the Alabama Supreme Court adopted the definition of the "wrongful intrusion" branch of the tort of invasion of privacy set forth in the Restatement (Second) of Torts, which states that "one who intentionally intrudes physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *See Johnson v. Stewart*, 854 So. 2d 544, 547–48 (Ala. 2002) (quoting *Phillips*, 435 So. 2d at 708–09 (in turn quoting Restatement (Second) of Torts, § 652B (1977))). Plaintiff argues that the following allegations state a wrongful intrusion claim against defendant upon which relief can be granted: (1) she received seven collection letters; (2) she "received hundreds of calls at all times of the day and night" despite her request not to be contacted; and (3) "live representatives making the calls would often make disparaging remarks and

5

were harassing and abusive."  Pl. Resp. (doc. 15) at 5–6.

While plaintiff's response places at issue seven collection letters, her Complaint alleges that she only received two letters from defendant CONA (*see* Doc.1, ¶¶ 19–20). The first letter was sent in response to a letter from plaintiff herself, and could not be argued reasonably to support a wrongful intrusion claim. *See* Compl. (doc. 1) at ¶ 19 ("On or about June 21, 2011, Plaintiff received a letter from [CONA] indicating that they investigated her dispute and found the account balance as correct. The letter indicated the Plaintiff had an outstanding balance of $2,093.66 and Plaintiff was responsible for this amount. Plaintiff avers that no other documentation was provided with this letter."). With respect to the second letter, plaintiff simply alleges that defendant CONA informed her that her account was being serviced by co-defendant NCO, proposing possible payment options. *See* Compl. (doc. 1) at ¶ 20. There is no allegation that either letter contained any unreasonable or harassing language so as to give rise to a claim for wrongful intrusion. All other letters allegedly received by plaintiff were purportedly sent by other parties, not CONA. *See* Compl. (doc. 1) at ¶¶ 11, 13, 14, 15, 18, 22.

Plaintiff also alleges that "Defendants have called Plaintiff hundreds of times at all times of the day and night" despite her request not to be contacted. Compl. (doc. 1) at ¶ 25. According to plaintiff, this allegation supports a wrongful intrusion claim

against CONA. However, plaintiff's complaint fails to allege that CONA made any harassing phone calls—or, in fact, any calls whatsoever—while she does specifically allege that the other defendants made harassing phone calls. *See* Compl. (doc. 1) at ¶ 12, 17 (allegations of calls received from representatives of Global); Compl. ¶ 21 ("Plaintiff avers that throughout these times [relevant to the litigation] Plaintiff was receiving collection calls from NCO."). Moreover, even if plaintiff's blanket assertion that she received "hundreds" of phone calls were sufficient to implicate conduct by defendant CONA, such claim would, in the words of CONA, "support an allegation that CONA made one phone call to [plaintiff] on one day at 3 p.m., that she did not answer, and the other Defendants made the remaining 'hundreds of calls at all times of the day and night.'" Def. Reply (doc. 16) at 4. Plaintiff's allegations that she received harassing phone calls from CONA are thus speculative at best.

Taken together as true and in the light most favorable to the plaintiff, plaintiff's allegations do not support a claim against defendant CONA for wrongful intrusion because they either do not rise to the level of "unreasonable conduct" required under Alabama law or are conclusory and therefore insufficient to survive dismissal under *Twombly* and *Iqbal*. As such, they do not state an invasion of privacy claim against CONA. Defendant's motion is therefore due to be **GRANTED** with respect to Count II of plaintiff's complaint. The court will so rule by separate order.

7

**False Light Claim (Count III)**

The Alabama Supreme Court has explained the elements of a cause of action

for "false light" invasion of privacy as follows:

> One who gives publicity to a matter concerning another
> that places the other before the public in a false light is
> subject to liability to the other for invasion of his privacy,
> if (a) the false light in which the other was placed would be
> highly offensive to a reasonable person, and (b) the actor
> had knowledge of or acted in reckless disregard as to the
> falsity of the publicized matter and the false light in which
> the other would be placed.

*Butler v. Town of Argo*, 871 So. 2d 1, 12 (Ala. 2003) (quoting Restatement (Second)

of Torts § 652E (1977)) (other internal quotations omitted). Importantly, "[i]n the

context of a false-light claim, 'giving publicity' is 'making a "matter . . . public, by

communicating it to the public at large, or *to so many persons* that the matter must be

regarded as *substantially certain to become one of public knowledge*."'" *Regions

Bank v. Plott*, 897 So. 2d 239, 245 (Ala. 2004) (quoting *Ex parte Birmingham News*,

*Inc.*, 778 So. 2d 814, 818 (Ala. 2000) (in turn quoting Restatement (Second) of Torts

§ 652D, cmt. a. (1977))) (emphasis in original).

Before addressing the merits of plaintiff's false light claim, the court must

address the contention, raised initially in a footnote in defendant's Memorandum in

support of its motion (*see* doc. 12 at 10 n.3), that plaintiff's false light claim is

preempted by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* (2003).[1] Defendant directs the court's attention to another case arising in the Northern District of Alabama, *Schlueter v. BellSouth Telecommunications*, 770 F. Supp. 2d 1204 (N.D. Ala. 2010), and encourages the court to adhere to the reasoning in that case of Chief Judge Blackburn, who dismissed the plaintiff's state tort law claims based on the defendant's alleged reporting of inaccurate information to credit reporting agencies because they were preempted by 15 U.S.C. § 1681t(b)(1)(F). *See Schlueter*, 770 F. Supp. 2d at 1206–11. Defendant also notes without comment another Northern District case, *McCloud v. Homeside Lending*, 309 F. Supp. 2d 1335 (N.D. Ala. 2004), in which Judge Smith held that state tort claims were not preempted by § 1681t(b)(1)(F) or by § 1681h(e). *See McCloud*, 309 F. Supp. 2d at 1340–44. The court is persuaded by the reasoning of Judge Smith, as explained below.

The relevant portions of the FCRA are § 1681s-2, § 1681t(b)(1)(F), and § 1681h(e). Section 1681t(b)(1)(F) provides:

> No requirement or prohibition may be imposed under the laws of any State–
> (1) with respect to any subject matter regulated under–

---

[1] Plaintiff did not address defendant's preemption argument in her response, and defendant expanded thereupon in its Reply (*see* doc. 15 at 8). Defendant alleges that plaintiff's failure to refute that her claim is preempted by the FCRA "further confirms that her false light claim should be dismissed." Def. Reply (doc. 16) at 8. While plaintiff does herself a disservice by neglecting to address an issue raised by defendant, such omission is not of itself evidence that defendant's allegations are meritorious.

. . .

(F) section 1681s-2 of this title, relating to the
responsibilities of persons who furnish information
to consumer reporting agencies, except that this
paragraph shall not apply–

(i) with respect to section 54A(a) of chapter
93 of the Massachusetts Annotated Laws (as
in effect on September 30, 1996); or
(ii) with respect to section 1785.25(a) of the
California Civil Code (as in effect on
September 30, 1996) . . . .

Section 1681s-2 is a lengthy provision which addresses the "[d]uties of furnishers of

[credit] information upon notice of dispute." Section 1681h(e) provides:

Except as provided in sections 1681n and 1681o of this
title, no consumer may bring any action or proceeding in
the nature of defamation, invasion of privacy, or
negligence with respect to the reporting of information
against any consumer reporting agency, any user of
information, or any person who furnishes information to a
consumer reporting agency, based on information disclosed
pursuant to section 1681g, 1681h, or 1681m of this title, or
based on information disclosed by a user of a consumer
report to or for a consumer against whom the user has
taken adverse action, based in whole or in part on the
report except as to false information furnished with malice
or willful intent to injure such consumer.

*Id.* Judge Smith outlined the three varying approaches that district courts have taken

in construing these three statutes (*see generally McCloud* at 1340–42) before settling

on a group of decisions that are "based upon construction of the subject statutory

provisions." *Id.* at 1341. Judge Smith described this approach as follows:

10

The courts adopting this approach first look to the language of § 1681h(e), which specifically references "any action or proceeding in the nature of defamation, invasion of privacy, or negligence." 15 U.S.C. § 1681h(e). As the specified causes of action comprise a non-exclusive list of torts that might arise from false or inaccurate credit reports, § 1681h(e) is deemed by these courts as applying to any state-law causes of action that may be classified as "torts." Contrastingly, § 1681t(b)(1)(F) appears to deal only with state statutory regulation of credit reporting. This is evidenced by the fact that the two state statutory schemes specifically excluded from the ambit of § 1681t(b)(1)(F)— i.e., section 54A(a) of Chapter 98 of the Massachusetts Annotated Laws, and section 1785.25(a) of the California Civil Code—address inaccurate or incomplete information in a credit report. Thus, under the third approach, § 1681h(e) applies only to torts, while § 1681t(b)(1)(F) applies only to state statutory regulation of credit reporting practices and procedures. *See Carlson* [*v. Trans Union, LLC*], 259 F. Supp. 2d [517,] 521 [(N.D. Tex. 2003)].

Yet, another rationalization for the conclusion that § 1681t(b)(1)(F) cannot preempt all state law claims, including state common law tort claims, is that this section is a general preemption provision. In contrast, § 1681h(e) contains a more specific preemption clause (i.e. "any action or proceeding in the nature of defamation, invasion of privacy, or negligence"). When a specific statute carves out an exception to a general statute, the "specific statute will not be controlled or nullified by [the] general one, regardless of the priority of enactment." *Morton v. Mancari*, 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). Under [this] approach, § 1681h(e) would govern the question of preemption for the claims asserted in the present case. *See Jeffery v. Trans Union, LLC*, 273 F. Supp. 2d 725 (E.D. Va.2003); *Gordon v. Greenpoint Credit*, 266 F. Supp. 2d 1007 (S.D. Iowa 2003).

*McCloud*, 309 F. Supp. 2d at 1341.

The court is of accord with Judge Smith that § 1681h(e) governs the question of preemption for the false light claim asserted in the present case. Applying the statute here, the relevant portion reads as follows: "no consumer may bring any action or proceeding in the nature of . . . invasion of privacy . . . with respect to the reporting of information against any . . . person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e) (2003). Therefore, if plaintiff alleged that defendant acted "with malice or willful intent to injure," then plaintiff's claim will survive dismissal by way of preemption. As noted *supra*, under Alabama law, a false light claim may only be maintained if, *inter alia*, "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light which the other would be placed." *Butler*, 871 So. 2d at 12. Taking plaintiff's allegations as true, plaintiff specifically alleges that defendant's "actions were willful, **reckless**, wanton, and/or made **with malice** and resulted in the Plaintiff being unreasonably placed in a false light." Compl. (doc. 1) at ¶ 57 (emphasis supplied). Plaintiff's allegations with respect to a claim of false light under the common law of Alabama are therefore pleaded with sufficient specificity to survive dismissal due to preemption by the FRCA.

12

Turning to the substance of plaintiff's false light claim, defendant observes that under Alabama law, "[i]n the context of a false-light claim, 'giving publicity' is 'making a "matter . . . public, by communicating it to the public at large, or to *so many persons* that the matter must be regarded as *substantially certain to become one of public knowledge*."'" *Regions Bank v. Plott*, 897 So. 2d 239, 245 (Ala. 2004) (quoting *Ex parte Birmingham News*, Inc., 778 So.2d 814, 818 (Ala. 2000) (in turn quoting  Restatement (Second) of Torts § 652D, cmt. a. (1977))). Defendant then avers that plaintiff "has only alleged that purportedly inaccurate information was communicated to the 'national credit reporting media and/or other third parties including collectors,' not the public at large," such that the "publicity" element of false light has not been satisfied. *See* Def. Mem. (doc 12) at 9 (quoting Compl. (doc. 1) at ¶ 53).

This logic is unpersuasive. As plaintiff explains in her response,

> [Defendant's] reporting of inaccurate information to the national credit bureaus satisfies the "publicity" requirement because of the numerous ways an individual's credit report is used today. Credit reports are used by a wide variety of individuals and/or entities who attempt to gather information about certain individuals. Inaccurate information contained within an individual's credit report can have devastating results and would be highly offensive to a reasonable person. Thus, . . . [defendant's] publishing of inaccurate information to the national credit bureaus satisfies the publicity element of a false light claim because

> of the near limitless individuals and/or entities which can
> and do access such information.

Pl. Resp. (doc. 15) at 7. Taking plaintiff's allegations as true and viewing them in the

light most favorable to the plaintiff, for the reasons discussed *supra*, defendant has

failed to demonstrate either that plaintiff's false light claim is preempted by the

FCRA or that plaintiff has failed sufficiently to plead the "publicity"element of false

light. Accordingly, defendant's motion to dismiss plaintiff's false light claim (Count

III of plaintiff's Complaint) is due to be **DENIED**. The court will so rule by separate

order.

**Wantonness Claim (Count V)**

Alabama law requires a plaintiff seeking recovery on a theory of negligence to

establish (1) the existence of a duty owed to the plaintiff by the defendant, (2) a

breach by the defendant of that duty, (3) the breach of that duty proximately caused

the plaintiff's injury, and (4) damages or injury sustained by the plaintiff. *See Crowne*

*Investments, Inc. v. Bryant*, 638 So. 2d 873, 878 (Ala. 1994) (citing *Albert v. Hsu*, 602

So. 2d 895, 897 (Ala. 1992)); *compare* 65 C.J.S. Negligence § 100 ("While

recklessness is similar to negligence in that it requires a showing of a duty,

recklessness is sometimes held to be different from, and to be more than, negligence,

or even gross negligence . . . .") (internal footnotes omitted). "Wanton" conduct is

14

defined as existing where a defendant "consciously acts or fails to act with a reckless or conscious disregard of the rights or safety of others, and [the defendant] is aware that harm will likely or probably result." APJI Civil 29.00 (2011 ed.). Plaintiff alleges that the defendants were negligent, reckless and/or wanton in their: (1) alleged failure to properly investigate her dispute that she was not responsible for the debt and that the debt had been paid in full; (2) alleged failure to adopt policies and procedures to govern (i) investigating consumer claims that accounts had been previously paid off, (ii) ensuring false information is not disseminated, and (iii) preventing harassing collections communications; and (3) alleged failure to train their employees with respect to (i) investigating consumer claims that accounts had been previously paid off, (ii) ensuring false information is not disseminated, and (iii) preventing harassing collections communications. *See* Compl. (doc. 1) at ¶¶ 67–69.

In its memorandum, defendant cites a case from the Southern District of Alabama, *Rigby v. FIA Card Services, N.A.*, 2011 WL 6669052 (S.D. Ala. 2011), and contends that plaintiff, in a similar fashion to the plaintiff in *Rigby*, has failed to identify any duty owed by defendant. In that case, the plaintiff alleged that the defendant "failed in its duty to reasonably investigate his dispute" regarding a charge made to his credit card. *Id.* at *6 (internal quotations omitted). The court noted, however, that the plaintiff failed to identify "any specific law, statutory or otherwise,

15

where a creditor owes a duty to investigate billing errors outside of the [Fair Credit Billing Act]," and held that "[b]ecause the plaintiff could not meet the requirements to state a claim under the Fair Credit Billing Act and failed to identify any other source of law that imposed a duty on the defendant to investigate his disputed credit card charge," the negligence and wantonness claims were dismissed. *Id.* Defendant alleges that plaintiff, like the plaintiff in *Rigby*, has failed to identify "any specific law, statutory or otherwise, where a creditor owes [the] duty" forming the basis of her claims" and "[i]nstead, she merely asserts conclusively that Defendants' conduct was negligent, reckless and/or wanton." *See* Def. Mem. (doc. 12) at 12.

The court disagrees. Among the duties owed by a creditor to individuals to whom it issues credit are, *e.g.*, a duty to maintain accurate records and a duty not to report false information about those individuals to third parties. Taking plaintiff's allegations as true and viewing them in the light most favorable to plaintiff, such allegations are sufficient to sustain a claim of, at minimum, negligent conduct by defendant, though they do not at present exclude the possibility of reckless or wanton conduct either. Accordingly, defendant's motion to dismiss is due to be **DENIED WITHOUT PREJUDICE** with respect to Count V of plaintiff's claim, with leave to revisit this issue by subsequent motion at the close of discovery.

16

**Conclusion**

Having considered the foregoing, and being of the opinion that the motion to dismiss (doc. 11) of defendant Capital One, N.A., is due to be **GRANTED IN PART** and **DENIED IN PART**, the court shall so rule by separate Order.

**DONE** and **ORDERED** this 15th day of August 2012.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

17